**RAILWAY LABOR EXECUTIVES' ASSOCIATION, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD, et al., Defendants.**

**Civ. A. No. 82–2757.**

United States District Court,
District of Columbia.

March 20, 1984.

Clinton J. Miller, III, Joseph R. Guerrieri, Jr., John J. Sullivan, Highsaw & Mahoney, P.C., Washington, D.C., for plaintiff.

Christine Jones, Pamela E. Savage, U.S. Department of Justice, Washington, D.C., Ronald M. Etters, Gen. Counsel, National Mediation Bd., Washington, D.C., Terry Lee, General Services Admin., Washington, D.C., for defendants.

Richard T. Conway, Ralph J. Moore, Jr., Shea & Gardner, Washington, D.C., for amicus curiae.

---

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This proceeding comes before the Court on the plaintiff's application for temporary and preliminary injunctive relief, as well as cross motions for summary judgment.[1] The request for injunctive relief arises from the recent decision of the defendants to terminate the occupancy of the National Railroad Adjustment Board ("Board") in certain office facilities located in Chicago, Illinois. The Board has used the offices in carrying out its assigned duties as arbitrators under the Railway Labor Act ("RLA" or "Act"). 45 U.S.C. § 151 et seq.

## BACKGROUND

This litigation arises from the decision of the Reagan Administration to eliminate federal funding for office space occupied by a railroad industry arbitration board. The arbitration unit, known as the National Railroad Adjustment Board ("Board"), was established pursuant to the 1934 amendments to the Railway Labor Act for the purpose of resolving grievances between rail carriers and their employees in the railroad industry.

The Act provides for a Board consisting of 17 members selected by the employer railroads and 17 members selected by various labor organizations. The Board members are partisan representatives of labor and management, respectively. Since these representatives are not federal government employees they are compensated by the parties whom they represent. In the event that a panel of the Board is unable to resolve a dispute, a neutral referee is selected to break the deadlock. Since its inception, the Board has enjoyed government support for the costs of certain office space, furnishings and equipment, and salaries of federal employees who serve as support staff.

Plaintiff Railway Labor Executives' Association ("RLEA") is an unincorporated association of representatives of labor unions. The 17 union members serving on the Board are appointed by the RLEA. The plaintiff commenced this lawsuit in 1982 when the administration's proposed fiscal year ("FY") 1983 budget sought to eliminate federal financial support for private office space for Board members. In response to these efforts to curtail funding, Congress approved FY 1983 appropriations which were sufficient to fund private office space. Pub.L. 97–377, 96 Stat. 1830, 1903 (1982).

The following year, the administration once again sought to terminate funding for the Board's private office space. This time, Congress took no action to preserve the office space. Instead, the General Services Administration ("GSA") notified the Board members that they must vacate their present office space by March 20, 1984. The federal government will continue to provide space for conference and hearing rooms, as well as facilities for the federal employees who serve as the support staff for the NRAB.

The defendants in this proceeding are the National Mediation Board (NMB) and the GSA. The NMB, like the Board, was established pursuant to the Railway Labor Act. 45 U.S.C. § 154. It exercises financial control over the Board's funds. 45 U.S.C. § 154, Third. The GSA is responsible for the operation and maintenance of office buildings used by government agencies. 40 U.S.C. § 490(h).

While the rail carriers along with the labor unions are members of and have equal representation on the Board, they did not join the plaintiff in this lawsuit. However, on March 5, 1984 the National Railway Labor Conference, an organization of carriers, filed an amicus brief supporting the position of the plaintiff.

1. After the parties filed cross motions for summary judgment, they came before the Court on March 5, 1984 on the plaintiff's application for injunctive relief. Since the material facts are not disputed and only questions of law are involved, the Court will resolve the matter on the summary judgment motions.

The narrow issue before the Court is whether the Railway Labor Act mandates the provision of private office space for Board members at government expense.[2] The record indicates that all 17 union members have private offices, while seven carrier members have offices. Affidavit of Rowland K. Quinn (Exec.Sec. of NMB) at ¶ 2, attached as Ex. 1 to Defendants' Motion for Summary Judgment, filed March 21, 1983. The absence of office space for carrier members is explained by the fact that the railroads have not filled their statutory allotment of 17 Board members. In February 1983, only five carrier representatives served on the Board. Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations for 1984: Hearings before Subcomm. of the House Comm. on Appropriations ("1983 House Hearings"), 98th Cong., 1st Sess. 790, 808 (1983).

After considering the plaintiff's application for injunctive relief, the cross motions for summary judgment, the supporting memoranda, the oral argument of counsel, and the complete record, the Court concludes that the Act does not require the federal government to fund these private offices. Accordingly, the plaintiff's application for equitable relief is denied, the defendants' motion for summary judgment is granted, and the plaintiff's complaint is dismissed with prejudice.

## LEGAL ANALYSIS

### A.

The plaintiff contends that free private office space for Board members is mandated by the RLA, 45 U.S.C. § 153, First (t), and that the defendants do not have the discretion to terminate funding for this space. Section 153, First (t) provides that:

*[w]henever practicable,* the several divisions or subdivisions of the Adjustment Board shall be supplied with *suitable quarters* in any Federal building located at its place of meeting (emphasis added).

A second provision of the RLA, 45 U.S.C. § 154 Third, is also relevant. That section provides in part that:

The Mediation Board [NMB] *may ...* make such expenditures ... for rent and personal services at the seat of government and elsewhere, ... and other necessary expenses of the Mediation Board, Adjustment Board [NRAB], Regional Adjustment Boards established under paragraph (w) of section 3 [of this title], and boards of arbitration, in accordance with the provisions of this section and sections 3 and 7 [of this title], respectively), *as may be necessary for the execution of the functions vested in the Board, in the Adjustment Board* and in the boards of arbitration, *and as may be provided for by the Congress from time to time* (emphasis added).

Taken together, a fair reading of the two sections supports a conclusion that the provision of individual private office space by the federal government is qualified rather than absolute. Under the two sections, the NMB "may" pay rent for "suitable quarters," only when "practicable" and "as may be necessary for the execution of the functions vested in the Board." The phrase "whenever practicable" does not impose a mandatory requirement on the defendants to furnish private office space to Board members. Instead, Congress gave the NMB considerable latitude to determine whether the Board should be provided with private office space. If Congress had intended to prevent the NMB from exercising this sort of discretion, it could have imposed such a requirement in clear and uncertain terms. In the absence of such a congressional mandate, the agency retains the discretion to make this determination.

Counsel for amicus curiae, the National Railway Labor Conference, an organization of carriers, has filed a brief which discuss-

---

**2.** In the motion for injunctive relief, the plaintiff asks the Court to enjoin the defendants from locking the Board out of its Chicago, Illinois offices. On the merits, the plaintiff seeks an order requiring the defendants to furnish the 17 union representatives with private office space, unless the RLA is amended to provide for a contrary result.

es the legislative history of the Act. The brief details testimony presented in 1934 to the Congress during its consideration of the 1934 Amendments to the Railway Labor Act. The amicus and the plaintiff contend that the testimony of Joseph B. Eastman, the Federal Coordinator of Transportation, and Samuel Winslow, Chairman of the Board of Mediation, shows Congress' intent that the federal government must pay all operating expenses of the Board and all boards of adjustment. Railway Labor Act Amendments: Hearings before the House Comm. on Interstate and Foreign Commerce, 73d Cong., 2d Sess. 51–52, 73 (1934).

Even if this characterization of the testimony is correct, the testimony is problematic in several respects. First, the legislative history does not reveal whether the 1934 Congress accepted the views of Eastman and Winslow concerning the federal government's duty to pay for the operating expenses of the Board.

Second, these remarks do not interpret the amendments in a manner which precludes the NMB from determining which operating expenses are permissible. The remarks in no way suggest that the Board can demand private office space, and indeed, the federal government's practice has been to deny private office space to members of railroad grievance boards other than the Board. *See* opinion letter of William E. Fredenberger (former General Counsel of the NMB), dated Oct. 4, 1976, attached as Ex. 7 to Post-Hearing Submission of Plaintiff Railway Labor Executives' Association, filed March 11, 1984.[3]

### B.

The plaintiff places great reliance on the fact that for nearly 50 years the government has provided individual office space in private buildings to Board members. The pattern was interrupted briefly between 1965 and 1969 when a portion of the Board

was located in a United States Post Office. Affidavit of John C. Fletcher (former Vice Chr. of the Board) at ¶ 3, attached to Plaintiff's Motion for Summary Judgment, filed April 27, 1983. The plaintiff suggests that this long-established practice reflects the government's belief that the Act requires that suitable quarters be provided in either publicly-owned or privately-owned facilities.

In light of this history, the GSA considered the possibility of revoking this benefit and requested a determination about the legality of the proposed action. *See* Letter of Peter G. Hebert (Acting Chief, GSA Assignment and Utilization Branch) to Roy J. Carvatta (a Staff Director of the Board), dated Sept. 15, 1976, Plaintiff's Ex. 6. In an opinion letter dated October 4, 1976, William E. Fredenberger, NMB General Counsel, advised Mr. Carvatta that the federal government was required to furnish the NRAB with "suitable office space in Chicago, Illinois." Plaintiff's Ex. 7 at 2. Although the opinion letter offers an interpretation of the Act which is consistent with past practice, it is not entitled to the customary weight accorded an official agency pronouncement. The letter is an internal agency pronouncement rather than a publicly-announced position. *See* 2A C. Sands, *Sutherland Statutory Construction*, § 49.05 (4th ed. 1973). In any event, the NMB's practice does not in any way prevent an exercise of discretion when warranted by changed circumstances.

### C.

Recent developments, including actions of congressional appropriations committees, are also instructive and shed light on the central issue presented—whether the RLA requires the government to provide rent-free office space to the Board. Statements of members of Congress at appropriations hearings for FY 1984 indicate much

---

**3.** The parties have conveniently catalogued the majority of their respective exhibits in post-hearing submissions. *See* Plaintiff's Post-Hearing Submission; Defendants' Post-Hearing Memorandum, filed March 12, 1984. Many of these exhibits were attached to earlier pleadings. These new exhibits will be referred to by the designation of the party and the exhibit number, *e.g.*, Plaintiff's Ex. ——; Defendants' Ex. ——.

concern about the operations of the Board. Of special interest was the increasing inability of the Board to resolve pending cases and the costs of providing private office space for the Board. 1983 House Hearings at 812–13, (statement of Rep. Natcher), 815 (statement of Rep. O'Brien). In the last several years, the vast majority of cases presented for arbitration were not resolved by the partisan members of the Board but by neutral referees, employed by the NMB. In FY 1982 the Board decided only three cases while the neutral referee decided 1,253. Comparable figures for FY–1981 and 1980 showed similar disparities. For 1981 the difference was two compared to 795 and for 1980 it was four to 835. Defendants' Ex. 2. It should also be noted that the neutral referees have never been provided with government funded office space.

The Congress was also aware of the estimate of NMB Chairman Harris that the private offices were occupied approximately 60 percent of the working day, 1983 Hearings at 815, and that only five of the 17 carrier representatives of the Board were "functioning" as Board members. *Id.* at 808. Chairman Harris further testified that five Board members reside outside of the immediate Chicago area in Washington, D.C., Ohio, Kentucky, Wisconsin and Alabama.

In light of this mounting evidence, the NMB determined that the cost of private office space for the Board was unwarranted. Instead it sought increased funds for the services of neutral referees.[4] *Id.* at 810–11; Departments of Labor, Health and Human Services, Education and Related Agencies Appropriations for FY 1984: Hearings before the Senate Comm. on Appropriations, 98th Cong., 1st Sess. 1173

(1983). Congress approved this request and increased the amount of appropriations for the services of neutral referees. Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Bill, 1984, S.Rep. No. 247, 98th Cong., 1st Sess. 169 (1983); Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Bill, 1984, ("House Report") H.R.Rep. No. 357, 98th Cong., 1st Sess. 132 (1983).

Moreover, an appropriations measure reported by the House Appropriations Committee and adopted by Congress supports the inference that Congress supports the NMB's actions. In response to the Committee's request for information concerning Board funding, the NMB provided two separate amounts. See letter from Rowland K. Quinn, Jr. (Exec.Sec. of NMB) to House Appropriations Committee, dated June 23, 1983, Defendants' Ex. 6. The higher figure included funds for private office space, while the lower figure did not include funds for this purpose. The Committee followed the recommendation of the NMB, and reported an appropriations amount for the NMB which did not include funds for private office space for the Board. House Report at 132. The Conference Committee expressly approved the amount proposed by the House Committee. Appropriations for the Departments of Labor, Health and Human Services, and Education and Related Agencies for the Fiscal Year Ending September 30, 1984, H.R.Rep. No. 98–422, 98th Cong., 1st Sess. 30 (1983).[5] At a minimum, these recent actions indicate that Congress did not disagree with the defendants' decision to terminate funding for private office space for NRAB members.

---

4. The NMB has had the responsibility of seeking appropriations from the Congress for itself and the Board since 1960. Plaintiff's Exs. 4, 5.

5. The issue of private offices for the Board was not squarely addressed during consideration of 1983 appropriations for Board activities. Congress appropriated funds which were generally targeted for railroad grievance activities for FY 1983, Pub.L. 97–377, 96 Stat. 1830, 1903 (1982),

despite the fact that the president's budget for FY 1983 proposed no funds for these purposes. See Budget of the United States Government, Fiscal Year 1983, Ex. 2 to Defendants' Motion. Since these lump sum appropriations were sufficient to pay for the cost of private office space for the Board, Affidavit of Rowland Quinn at ¶¶ 9–11, the members were not forced to vacate their private office space.

284

## CONCLUSION

Based on the above discussion, the Court concludes that the defendants acted within the limits of the discretion conferred by the Railway Labor Act. Under the circumstances, the decision to terminate the federally funded office facilities afforded the plaintiff in Chicago, Illinois, was warranted by the circumstances, reasonable and in accordance with the law.