**RAILWAY LABOR EXECUTIVES'
ASSOCIATION, et al.,
Plaintiffs,**

v.

**NATIONAL MEDIATION
BOARD, Defendant.**

**Civ. A. No. 91–1136.**

United States District Court,
District of Columbia.

Nov. 19, 1991.

John O'B. Clarke, Jr., L. Pat Wynns,
Washington, D.C., for plaintiffs.

Theodore C. Hirt, Susan Friedman Co-
hen, Civil Div., Dept. of Justice, Washing-
ton, D.C., for defendant.

MEMORANDUM

GESELL, District Judge.

This labor controversy comes before the
Court on cross motions for summary judg-
ment testing the authority of the National
Mediation Board to discontinue payment
for services and expenses of neutral media-
tors selected for two special boards of ad-
justment ("SBAs"). The issues have been
fully briefed and argued. There are no
material issues of fact in dispute.

I

Plaintiffs are an unincorporated associa-
tion of the chief executive officers of sev-
enteen labor organizations, which are al-
leged collectively to represent most of the
organized rail employees in the country,
and six other labor organizations represent-
ing various classes of railway employees.
Their claim arises out of two mediation
agreements affecting them, dated respec-
tively September 25, 1964, and January 27,
1965, each of which established a special
board of adjustment (SBAs 570 and 597) to
resolve certain labor disputes. The agree-
ments provided that compensation and ex-
penses of neutral members of the adjust-
ment boards would be shared equally by
the parties. However, contemporaneously
with the signing of the agreements, the
parties executed side letters that stated
that "the parties have no objection to an
arrangement, subject to the approval of the
National Mediation Board, whereby the
compensation and expenses of the neutral
members who will serve on this Board shall
be handled in accordance with the usual
practice for compensating referees under
special board of adjustment procedures."
Complaint Exs. 4, 6. At the bottom of each
side letter, an official of the National Medi-
ation Board indicated the Board's approval.

■ At the time the agreements were
signed, the usual practice with regard to
the payment of neutrals was that the
Board would pay the compensation and ex-
penses of neutrals unless the parties indi-
cated that they would share such costs.
That practice began in the 1940s and con-
tinued until 1991. The present controversy

emerged when the Board decided sua sponte, on January 28, 1991, to stop paying neutrals appointed to SBAs. *See* Letter of the National Mediation Board to Mr. R.I. Kilroy and Mr. Charles I. Hopkins, 18 NMB No. 30 (January 28, 1990 [sic]) (Complaint Ex. 7). Plaintiffs contend that the relevant statutes compel the Board to pay neutrals, and that, in any case, the Board acted arbitrarily and capriciously when it decided to discontinue paying neutrals. Defendants argue that the Court lacks jurisdiction and, alternatively, that the decision was within the Board's discretion.

## II

Plaintiffs assert that the Court should review the merits of this case according to the standards set out in the APA, 5 U.S.C. § 701 *et seq.* Although plaintiffs recognize that courts have generally applied a much more lenient standard of review to cases involving decisions of the Board, they argue that, in contrast to many of those past cases, this case . does not involve the Board's duties to investigate representation disputes or to mediate employer-employee disputes, but rather that it involves a third function of the Board, namely, to administer the procedures relating to adjustment and arbitration boards such as are described in Section 3 Second. Plaintiffs urge that because the Board action relates to this third function of the Board, it is subject to the same judicial review under the APA as any other agency's action.

■ Plaintiffs' argument, however, does not suffice to outweigh the long-established recognition given to the Board's exercise of discretion in deciding the delicate labor controversies within its special jurisdiction and expertise. It is well established that a court has only limited authority to review the actions of the National Mediation Board. A long line of cases beginning with the initial decision of the Supreme Court in *Switchmen's Union of North America v. National Mediation Board,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), has maintained the narrow scope of review given federal courts over the Board's exercise of its delicate responsibili-

ties. As noted in *Brotherhood of Railway and Steamship Clerks etc. v. Association for the Benefit of Non–Contract Employees,* 380 U.S. 650, 659–60, 85 S.Ct. 1192, 1197, 14 L.Ed.2d 133 (1965), that jurisdiction is simply to assure that the Board is acting within its delegated powers and not contrary to a specific prohibition of the enabling statutes. This Circuit has made crystal clear that, in cases challenging a decision of the Board, a court may do no more than take a "peek at the merits" to look for obvious error on the face of the papers—a "narrow role" indeed. *See Professional Cabin Crew Association v. National Mediation Board,* 872 F.2d 456, 459 (D.C.Cir.), *cert. denied,* 493 U.S. 974, 110 S.Ct. 497, 107 L.Ed.2d 500 (1989). This extraordinarily limited review serves its expressed purpose by guaranteeing to the National Mediation Board the broad discretion and much needed flexibility so essential for the proper fulfillment of the Board's functions. The "peek" limitation on the Court's jurisdiction, which is the narrowest of review powers, continues to be the standard that controls. *See id.* at 459.

## III

Plaintiffs have advanced several arguments to support their contention that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.,* requires the Board to fund. neutrals appointed to SBAs created pursuant to the first paragraph of Section 3 Second of the RLA, 45 U.S.C. § 153 Second. Before 1966, there was only one paragraph in Section 3 Second—the paragraph that is today the first paragraph. That paragraph authorized the creation of SBAs only at the request of both parties. The second paragraph, which was added in 1966, amended the section to allow for the creation of SBAs at the request of either party, either the unions or the carriers. The second paragraph also states that neutrals "shall be compensated and reimbursed for expenses by the Mediation Board." 45 U.S.C. § 153 Second. The primary question, then, is whether this clause in the second paragraph providing for payment of neutrals by the Board should be

interpreted to apply to neutrals appointed to SBAs created pursuant to the first paragraph.

The statute itself does not explicitly address the issue. Plaintiffs have pointed to a number of provisions in other parts of the RLA that provide for payment of neutrals by the Board, and they argue that those sections indicate a general statutory design to have the Board pay the compensation and expenses of "all neutrals appointed to boards created for the purpose of dispute resolution, be they National Railroad Adjustment Boards, special boards of adjustment, or major dispute arbitration boards." Pl.Memo. at 17. Plaintiffs suggest that further support for their claim may be found in the fact that the Board had always—until January 28, 1991—paid for neutrals appointed pursuant to both paragraphs of Section 3 Second.

Still, the statute is conspicuously silent on the subject of the costs of neutrals appointed pursuant to the first paragraph of Section 3 Second. The second paragraph of Section 3 Second explicitly provides for the Board's payment of the costs of neutrals appointed to that paragraph's boards of adjustment. But the boards of the second paragraph are different from the SBAs of the first paragraph. The Board itself, for many years now, has distinguished the two types of boards, for example, by labelling those created pursuant to the first paragraph "special boards of adjustment"—including SBAs 570 and 597 involved here—and those created pursuant to the second paragraph "public law boards." Moreover, the courts that have specifically addressed the question have adopted the same distinction, and have held that the provisions relating to the public law boards of the second paragraph do not apply to the SBAs of the first paragraph. *See, e.g., United Transportation Union v. Norfolk and Western Railway Co.,* 822 F.2d 1114, 1121 & n. 20 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988); *Merchants Despatch Transportation Corp. v. Systems Federation Number One Railway Employees' Department AFL–CIO Carmen,* 551 F.2d 144, 147–48 (7th Cir.1977). And in the first

paragraph of Section 3 Second, there is no provision relating to the payment of neutrals. Thus, no statutory directive exists on the question of who pays the compensation and expenses of neutrals appointed to SBAs, and in the absence of any statutory language on the subject, the Board cannot be said to have acted contrary to law.

Not only was the Board's decision not in violation of the enabling statute, however, but in this case the Board's decision was rational and within the Board's discretion. For many years, the Board has paid the costs of neutrals under the second paragraph of Section 3 Second. It decided this year to change that policy for the simple reason that recent budgetary constraints have forced it to allocate its resources differently. *See* Letter of the National Mediation Board to Mr. R.I. Kilroy and Mr. Charles I. Hopkins, 18 NMB No. 30 (January 28, 1990 [sic]) (Complaint Ex. 7); *cf. Railway Labor Executives' Association v. National Mediation Board,* 583 F.Supp. 279 (D.D.C.1984), *aff'd mem.,* 757 F.2d 1342 (D.C.Cir.1985) (per curiam) (finding it within the Board's discretion to discontinue funding of office space for the National Railroad Adjustment Board despite the fact that such office space had been funded for nearly 50 years). Moreover, Congress and the President have recently indicated a willingness to have the parties share the costs of neutrals. Public Law 102–29, which was enacted on April 18, 1991, created a new arbitration mechanism for resolving many of the disputes that formerly were handled by SBA 570, and directed, among other things, that the costs for the neutral members of the new panels should be shared by the parties. If nothing else, this recent law indicates that, contrary to plaintiffs' assertion, Congress does not intend for the Board to compensate the neutrals of *every* dispute-resolution board created to resolve railway labor disputes.

In sum, after taking a peek at the merits of the case, the Court cannot conclude that the Board committed any obvious error when it decided to discontinue funding for SBAs 570 and 597. On the contrary, even a more searching examination of the

Board's action indicates that the decision was a rational and reasonable exercise of the Board's discretion under the RLA.[1]

An appropriate Order accompanies this Memorandum.

## ORDER

For the reasons stated in the accompanying Memorandum, after full briefing and oral argument on cross-motions for summary judgment, it is hereby

ORDERED that plaintiffs' motion for summary judgment is denied; and it is further

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that the Complaint is dismissed with prejudice.

---

1. Plaintiffs also request that the Court grant a writ of mandamus. In light of the fact that plaintiffs have failed to show a clear duty on the part of the Board to pay the costs of the neutrals of SBAs 570 and 597, a writ of mandamus is neither appropriate nor permissible.